IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CR. NO. 1:15-CR-309 |
| | : | |
| v. | : | (Chief Judge Conner) |
| | : | |
| JALIL IBN AMEER AZIZ, | : | (electronically filed) |
| Defendant. | : | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTIONS IN LIMINE

The United States of America, by and through undersigned counsel, hereby requests that the Court deny the defendant's motion *in limine* to exclude two backpacks and the items contained therein. (Rec. Doc. 78). The evidence is relevant and admissible pursuant to Rule 401 or, in the alternative, Rule 404(b) of the Federal Rules of Evidence. Specifically, the backpacks, which contained, *inter alia*, a knife, balaclava, and five ammunition magazines, are relevant because they are direct evidence of the defendant's efforts to provide material support to the Islamic State of Iraq and the Levant ("ISIL"). The backpacks and their contents are also admissible as evidence of identity, intent, lack of mistake, and to explain why the government charged and arrested the defendant.

1

The defendant has also moved to exclude any reference to unindicted coconspirator Junaid Hussain being targeted and killed by a United States drone strike.   (Rec. Doc. 83).   The government requests that the Court dismiss this motion as moot.   At this point, the government does not intend to discuss Hussain's alleged targeting by a United States drone strike.   The government respectfully requests that it be permitted to introduce testimony that Hussain was killed in combat in Syria.

## I.    Background

The defendant is charged in a four-count superseding indictment. Count I charges the defendant with conspiring to provide material support and resources to ISIL, in violation of 18 U.S.C. § 2339B.   Count II charges the defendant with attempting to provide and providing material support and resources to ISIL, also in violation of § 2339B. Count III charges the defendant with solicitation to commit a crime of violence in violation of 18 U.S.C. §§ 2 and 373.   Count IV charges the defendant with transmitting a communication containing a threat to injure in violation of 18 U.S.C. §§ 2 and 875(c).   During the time period

charged in the indictment, ISIL was designated a Foreign Terrorist Organization ("FTO") under Section 219 of the Immigration and Nationality Act.

At trial, the government will argue that the defendant attempted to provide services as well personnel, namely himself and others, to ISIL.   The government will argue that the defendant conspired to provide services and personnel to ISIL.   Finally, the government will argue that the defendant actually provided services to ISIL.   The specific services at issue are travel facilitation and kill list dissemination services.

The pending motion concerns two backpacks and their contents, which include ammunition magazines, ammunition for an AR-15 or M4 assault rifle, a balaclava and a knife.   The FBI found these items in the defendant's residence on the day of his arrest.   The defense has moved to exclude the items, claiming that the charges against the defendant "involve electronic communications sent using a smart phone."   (Rec. Do. 79 at 2).

Indeed, most of the government's evidence does concern statements the defendant made using Twitter and other electronic communication services.   The defense fails to point out, however, that during the charged period, the defendant repeatedly expressed an affinity for weapons and, in particular, their use by ISIL fighters and supporters.   For example, on November 24, 2014, the defendant tweeted, "Life goals."   Ex. A.   The Tweet contained three images, two of which depict various assault rifles, handguns, and a shotgun.   *Id.* The third image, which is reproduced below, depicts a masked fighter carrying what appear to be a belt-fed machine gun and an AK-47.   The fighter has an ISIL flag in his vest or backpack.



4

On March 20, 2015, the defendant tweeted, "Who want this gear." Ex. B.   The Tweet contained three images of military-style backpacks that appear to be ready for use.   *Id.*   In one of the images, which is reproduced below, the backpack contains three weapons magazines similar to the magazines recovered from the defendant's residence.



The same day, the defendant also tweeted, "Imagine Islamic State having this type of gear."   Below this Tweet was the following image:



On May 11, 2015, the defendant tweeted, "New pack."   The Tweet

contained the following images:



It appears that this is one of the two backpacks that was recovered from the defendant's home.

Therefore, the backpacks and their contents are relevant, first and foremost, to prove that defendant knowingly supported ISIL and its terrorist mission.   Based on his own words, the defendant possessed these items because he believed them to be the tools of the terrorist trade.   Although the defendant never travelled to Syria or undertook an attack here in the United States, the defendant's possession of these items proves his intentional, substantial efforts to participate in ISIL's terrorist activities in any way that he could.

## A. ISIL's Terrorist Activities

ISIL is a terrorist organization that is based in Iraq and Syria. On or about September 21, 2014, the recently deceased Abu Muhammad al-Adnani ("Adnani")—who, prior to his death, served as an architect of ISIL's external operations and as ISIL's chief spokesman— issued a recorded statement calling for attacks against citizens, civilian or military, of the countries participating in the United States-led coalition against ISIL.

ISIL has encouraged followers who are unable to travel to the Middle East to instead conduct attacks in other countries.   To gain supporters, ISIL spreads its message using social media, Internet platforms, and email.   Using these platforms, ISIL posts and circulates videos and updates of events in Syria, Iraq, and other ISIL-occupied areas, in English and Arabic, as well as other languages, to draw support to its cause.

ISIL has disseminated a wide variety of recruiting materials and propaganda through social media.   These include photographs and videos depicting ISIL's activities, including beheadings and other atrocities, as well as audio and video lectures by members of ISIL and members of other extremist Islamic organizations.   Members, associates, and followers of ISIL frequently use a variety of electronic communications systems to attempt to avoid having their communications monitored by law enforcement.

## B. The Defendant's Use of Twitter

Until the date of his arrest, the defendant lived with his mother and father at 1733 Fulton Street, Harrisburg, Pennsylvania. Beginning in June 2014, he created and used approximately seventy-one Twitter accounts.   To obscure his identity, the defendant never used his true name on Twitter.   Instead, the defendant used a number of different nicknames or usernames.   Several of these names, however, were variations of the name "Colonel Shaami."   Many of the defendant's accounts were created or logged into from Internet Protocol ("IP") addresses that were assigned to the Azizs' residence.   Several of the accounts contained profile information or communications that were consistent with characteristics of the defendant.

The defendant posted numerous Tweets that contain language, photographs, and videos that evince his support for ISIL.   For example, on or about June 29, 2014, the defendant posted, "My bayah [allegiance] to sheikh Abu bakr Al Baghdadi."   That same day, Al Baghdadi announced that ISIL had created a caliphate in Iraq and Syria.

In March 2015, the defendant used Twitter to disseminate a list that was compiled by Junaid Hussain under the guise of the self-styled "Islamic State Hacking Division." Hussain was a well-known, English-speaking ISIL recruiter and radicalizer who was based in Syria. He operated under the *nom de guerre* Abu Hussain al-Britani. The list contained the names, photographs, ranks, military branches, and addresses of 100 U.S. military servicemembers. The introduction to the list directed ISIL supporters to "kill [the servicemembers] in their own lands, behead them in their own homes, stab them to death as they walk their streets thinking they are safe."

Given his prolific tweeting, it appears that the defendant acquired numerous followers in the Twitter pro-ISIL community. Likewise, it appears that several ISIL supporters believed that the defendant was located in ISIL-controlled territory. The government is aware of several instances in which ISIL supporters communicated with the defendant regarding how to travel to the Levant and join ISIL. These incidents, one of which is summarized below, support the government's

theory that the defendant provided himself and others as personnel to ISIL, and also that he provided travel facilitation services.

On May 25, 2015, an aspiring ISIL fighter ("CC-1")[1] contacted the defendant via Twitter.   CC-1 told the defendant that he was located in Sanliurfa, Turkey and requested assistance in travelling across the border into the so-called Islamic State.   The defendant facilitated CC-1's effort to join ISIL by, *inter alia*, advising him to use an encrypted messaging service; sending him maps and travel directions to Raqqa, Syria, which is ISIL's de facto capital; as well as instructing him to wipe "pro-IS" materials from his computer and not wear Muslim clothes when crossing the border.

The defendant communicated with Junaid Hussain about CC-1. Hussain provided Aziz with a Turkish telephone number and suggested that CC-1 use another encrypted messaging application to contact the number.   Hussain told Aziz that if that number did not work, CC-1 should contact another Twitter contact.   That account belonged to an

---

[1] To protect ongoing investigations, the government is not identifying CC-1.

ISIL member who operated under the *nom de guerre* Abu Qaqa.   Like Hussain, this fighter was a well-known, English-speaking ISIL recruiter and radicalizer who operated in Syria.   Aziz asked Hussain to pray that Aziz would make "hijrah [emigration to an Islamic country, in this context, to ISIL-controlled territory] safely."

Aziz then passed the Turkish phone number to CC-1.   Aziz and CC-1 discussed meeting each other one day in the "Islamic State," and Aziz expressed his own desire to travel to the "Islamic State."

### C. The Backpacks and Their Contents

On November 27, 2015, during a court-authorized search of the defendant's residence, members of the Federal Bureau of Intelligence ("FBI") saw what appeared to be the exact same backpack in a closet in the defendant's bedroom.   Inside of that backpack, the FBI saw, *inter alia*, five high-capacity magazines loaded with .223 ammunition, which is used in AR-15 or M4 variant assault rifles; a fixed-blade knife with a piece of gray cloth around the handles; a balaclava; two flashlights; a toothbrush; a small metal tin containing medication and Band-Aids; and various other sundry items.   At trial, the government intends to

introduce photographs of the backpack and these items that were taken during the search.

On December, 17, 2015, which was the date of the defendant's arrest, the FBI recovered the same tan backpack from his closet. Other than the ammunition and magazines, the tan backpack contained the items described above and others, including black fingerless gloves.[2] The magazines, which were unloaded, were found in a plastic bag with the ammunition behind a washer and dryer.   The washer and dryer were in a closet steps from the defendant's bedroom.   The second backpack, which had a digital camouflage print, contained earbuds, the defendant's elementary school identification card, two head scarves, and a rectangular piece of fabric with a missing corner.   It appears that the defendant used the missing corner to wrap the kitchen knife.   In addition to the photographs, the government intends to introduce both backpacks and their contents into evidence.

---

[2] The black balaclava was found on the defendant's bed.   It likely fell out of the backpack and was placed on the bed by an FBI agent during the search.

During the search, the government also recovered an essay that appears to have been written by the defendant.   The essay, which is dated March 30, 2014, describes the defendant's visit to a gun show with his father.   The defendant describes seeing "thousands of AR-15 Rifle[s] and variety of handguns."   The defendant also wrote that the defendant and his father "came across a dealer who sells *bug-out bags*" (emphasis added) and that he purchased one for $27.

## II.   Argument

As discussed above, the defendant's possession of these items is relevant for several purposes.   First and foremost, it is direct evidence of two elements of the material support offenses: (i) That the defendant knowingly provided material support or resources; and (ii) That the defendant knew ISIL engages in terrorist activity.   *See* 18 U.S.C. § 2339B(a)(1); *Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2740 (2010).   The evidence is also admissible to prove identity, absence of mistake, or lack of accident.   *See* Fed. R. Evid. 404(b).   Finally, the probative value of the evidence is not substantially outweighed by the

danger of unfair prejudice.   For these reasons, the defendant's motion to exclude the items should be denied.

## A. Legal Standards

Federal Rule of Evidence 401 provides for the introduction of "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."   The Third Circuit has held:

> The test of relevance under the Federal Rules of Evidence is low. "Because [Rule 401] makes evidence relevant 'if it has any tendency to prove a consequential fact, it follows that evidence is irrelevant only when it has no tendency to prove the fact.'" *Blancha v. Raymark Indus.*, 972 F.2d 507, 514 (3d Cir.1992) (quoting 22 Charles A. Wright & Kenneth W. Graham, *Federal Practice and Procedure: Evidence* § 5166, at 74 n. 47 (1978)).

*Failla v. City of Passaic*, 146 F.3d 149, 159 (3d Cir. 1998).

The Advisory Committee Note to Rule 401 explains, "As McCormick § 152, p. 317, says, 'A brick is not a wall,' or, as Falknor, Extrinsic Policies Affecting Admissibility, 10 Rutgers L. Rev. 574, 576 (1956), quotes Professor McBaine, '[I]t is not to be supposed that every witness can make a home run.'"   The Supreme Court has explained, "It

15

is universally recognized that evidence, to be relevant to an inquiry,

need not conclusively prove the ultimate fact in issue." *New Jersey v.*

*T.L.O.*, 469 U.S. 325, 345 (1985).  *See also* 2 J. McGlaughlin,

Weinstein's Federal Evidence § 401.04[2][c] (2d ed. 2003) (rule "permits

evidence to be admitted even if it only slightly affects the trier's

assessment of the probability of the matter to be proved.").

Evidence that does not directly prove the charged offense may

nevertheless be relevant under Federal Rule of Evidence 404(b).[3]   "In

---

3  The rule provides:

(b) Crimes, Wrongs, or Other Acts.

(1) Prohibited Uses.   Evidence of a crime, wrong, or other act is
not admissible to prove a person's character in order to show that
on a particular occasion the person acted in accordance with the
character.

(2) Permitted Uses; Notice in a Criminal Case.   This evidence
may be admissible for another purpose, such as proving motive,
opportunity, intent, preparation, plan, knowledge, identity,
absence of mistake, or lack of accident.   On request by a
defendant in a criminal case, the prosecutor must:

(A) provide reasonable notice of the general nature of any
such evidence that the prosecutor intends to offer at trial;
and

*Huddleston v. United States*, 485 U.S. 681 (1988), the Supreme Court set out a four-part test for admission of Rule 404(b) evidence: (1) the evidence must have a proper purpose; (2) it must be relevant; (3) its probative value must outweigh its potential for unfair prejudice; and (4) the court must charge the jury to consider the evidence only for the limited purposes for which it is admitted."   *United States v. Givan*, 320 F.3d 452, 460 (3d Cir. 2003).   Rule 404(b) makes no distinction between acts prior to and subsequent to the charged conduct.   *United States v. Bergrin*, 682 F.3d 261, 281 n.25 (3d Cir. 2012).

Rule 404(b) is a rule of inclusion rather than exclusion.   *See, e.g.*, *United States v. Long*, 574 F.2d 761, 765-66 (3d Cir. 1978).   The Third Circuit has spoken favorably of Rule 404(b) evidence on many occasions. In *United States v. Johnson*, the court noted:

---

(B) do so before trial -- or during trial if the court, for good cause, excuses lack of pretrial notice.

The rule as stated here was amended for stylistic purposes, effective December 1, 2011.   The Advisory Committee stated that no substantive alteration was intended.

17

> We favor the admission of such evidence, "if relevant for any other purpose than to show a mere propensity or disposition on the part of the defendant to commit the crime."   *United States v. Long*, 574 F.2d 761, 766 (3d Cir.), *cert. denied*, 439 U.S. 985 [] (1978); *see also United States v. Simmons*, 679 F.2d 1042, 1050 (3d Cir.1982), *cert. denied*, 462 U.S. 1134 [] (1983) . . . . "In weighing the probative value of evidence against the dangers . . . in Rule 403, the general rule is that the balance should be struck in favor of admission."   *United States v. Dennis*, 625 F.2d 782, 797 (8th Cir.1980).

199 F.3d 123, 128 (3d Cir. 1999).   *See also United States v. Daraio*, 445 F.3d 253, 263 (3d Cir. 2006) (confirming that admission of 404(b) evidence is favored).[4]   The court has particularly stated that "the Government has broad latitude to use 'other acts' evidence to prove a conspiracy."   *United States v. Cross*, 308 F.3d 308, 324 (3d Cir. 2002).

Under Federal Rule of Evidence of 403, the court must ensure that the probative value of any evidence is not substantially outweighed by the danger of unfair prejudice.   The balance should be struck in favor of admissibility.   *See United States v. Terzado-Madruga*, 897 F.2d

---

[4] Two recent panels of the Third Circuit described Rule 404(b) as "a rule of general exclusion" which "directs that evidence of prior bad acts be excluded—unless the proponent can demonstrate that the evidence is admissible for a non-propensity purpose."   *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014); *see United States v. Brown*, 765 F.3d 278, 291 (3d Cir. 2014).

1099, 1117 (11th Cir. 1990); accord, *United States v. Dennis*, 625 F.2d 782, 797 (8th Cir. 1980); *United States v. Day*, 591 F.2d 861, 878 (D.C. Cir. 1978).   Prejudice does not mean simply that the evidence is harmful to the defendant's case.   The Advisory Committee's Notes make clear that evidence is unfairly prejudicial if it has "an undue tendency to suggest decision on an improper bias, commonly though not necessarily, an emotional one."   Advisory Committee's Note, Fed. R. Evid. 403; *see Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir. 1980).

### B. The Items Seized from the Defendant's Residence Are Intrinsic to the Crime Charged

The items seized from the defendant's residence are intrinsic of the crimes charged in Counts I and II.   That is, they directly prove that the defendant acted knowingly with respect to his provision of material support, and that the defendant knew ISIL was engaged in terrorism. *See United States v. Green*, 617 F.3d 233, 248 ("[E]vidence is intrinsic if it 'directly proves' the charged offense.").

The defendant's own statements establish that he possessed the items because he believed that doing so would benefit ISIL.   The defendant repeatedly described these and other similar items as the

tools of an ISIL fighter.   Likewise, the defendant referred to his backpack as a "bug-out" bag.   The defendant could have used the backpacks and their contents to travel to Syria to join ISIL, to conduct an attack, or to combat or evade law enforcement.

That the defendant never actually used the backpacks in this way does not render them inadmissible.   The defendant undertook several other substantial steps to provide material support to ISIL, including communicating directly with known and aspiring ISIL fighters.

The case of *United States v.* York, No. 2:14-CR-00323, 2015 WL 10711459 (E.D. Pa. 2015) is instructive.   There, the defendant was charged on a conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846.   *Id.* at *1.   The government sought to introduce the fact that the defendant had pleaded guilty to unlawful possession of a firearm.   The possession of the firearm occurred within the defendant's drug-dealing territory, but the defendant was not charged with a firearms offense.   *Id.*   The defense moved to exclude evidence of the conviction, arguing that it was extrinsic and irrelevant to the conspiracy charge.   *Id.*   The district court disagreed, reasoning that "[it] has long

been recognized that firearms are relevant evidence in the prosecution of drug-related offenses, because guns are tools of the drug trade." *Id.* (quoting *United States v. Russell*, 134 F.3d 171, 183 (3d Cir. 1998) (citations omitted)).

The backpacks and their contents, as described by the defendant himself, are similarly the tools of an ISIL fighter. The items gave the defendant credibility, both in his own mind and in the jihadi community. The items are direct evidence of the defendant's efforts to provide material support to ISIL and to do anything within his power to support the organization's murderous mission. They should be admitted.

### C. The Items Are Also Admissible Under Rule 404(b) to Show Identity and Absence of Mistake

The items are also admissible under Rule 404(b). That is, they are part of "a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged." *United States v. Morely*, 199 F.3d 129, 133 (3d Cir. 1999). In *United States v. Green*, the Third Circuit explained that evidence is admissible if its proponent can identify "*any* non-propensity purpose"

for its introduction.   617 F.2d 233, 244 (emphasis original) (3d Cir. 2010).[5]

The items are not intrinsic evidence of the dissemination of the list of U.S. servicemembers, which is charged in Counts III and IV. Nevertheless, the backpacks and their contents are admissible as to those counts, as well as to the material support counts, to prove identity, absence of mistake, and to explain why the government charged and arrested the defendant.

With respect to identity, the items are a critical link between the defendant and his Twitter accounts.   As discussed above, the defendant attempted to conceal his identity by not using his true name, providing limited or false registration information to Twitter when opening accounts and, in some cases, asking others to open accounts for him.

---

[5] The United States respectfully requests that the Court provide the Third Circuit Model Jury Instruction on 404(b) evidence.   The instruction was approved by the Third Circuit in *United States v. Lee*, 612 F.3d 170, 191-92 & 191 n.2d (3d Cir. 2010).

Nevertheless, on May 11, 2015, the defendant tweeted two images of the tan backpack.   As discussed above, an identical backpack was found in the defendant's closet.

On July 11, 2015, the defendant tweeted a photograph of himself, wearing black fingerless gloves and with his face covered in a red headscarf.[6]



---

[6] The government believes that the text "I'M BACK KUFFAR [in this context, infidels]" refers to the defendant mocking his frequent suspension from Twitter.

Identical fingerless gloves were recovered from the tan backpack, and the red headscarf was recovered from the digital camouflage backpack. Likewise, on numerous instances, the defendant posted images of knives, magazines, and ammunition similar to those recovered from his residence.

Therefore, the evidence establishes: (i) The defendant possessed the items recovered from the residence; (ii) An individual used Twitter to provide material support to ISIL, including by disseminating a kill list; (iii) That same individual posted on Twitter images of what appear to be the items recovered from the defendant's home; (iv) Therefore, the person who used Twitter to provide material support is the same person who possessed the items.

The backpacks and their contents are also admissible to show absence of mistake or lack of accident.[7]   At trial, the defendant may

---

[7] The ammunition and magazines are also admissible to show consciousness of guilt.   The FBI found the magazines, which were unloaded, and the ammunition in a plastic bag.   The bag was hidden behind the residence's washer dryer.   A reasonable inference is that the only reason for placing the items in such an out-of-reach location is to hide them because they are being used for illicit purposes.

argue that he did not intend to support ISIL, that he engaged in a fantasy online, or that he was an "Islamic analyst." In fact, the defendant used a version of the phrase "Islamic analyst" for several of his Twitter accounts. Counsel for the defendant has already made public comments which suggest that he will pursue such a defense. See Matt Miller, Harrisburg terror suspect is 'just a kid who made mistake,' lawyer says, PennLive (May 24, 2016), available at http://www.pennlive.com/news/2016/05/harrisburg_terror_suspect_is_j.h tml (describing comments made by counsel after the defendant's arraignment on the superseding indictment).

The backpacks and their contents should be admitted to rebut these defenses. They prove that the defendant heeded the advice of ISIL's leadership and to arm himself and prepare to travel to ISIL-controlled territory or conduct attacks. They prove that the defendant did not accidentally attempt to provide himself and others to the organization, but that the defendant specifically sought for himself and others to fight for ISIL. Likewise, they prove that the defendant disseminated the kill list to bring real harm and violence to the

servicemembers.   The logical chain is as follows: (i) ISIL glorified violence and called for its supporters to arm themselves or travel to ISIL-controlled territory; (ii) The defendant armed himself, prepared himself and others for travel to ISIL-controlled territory, and threatened others with violence; (iii) The defendant was following ISIL's instructions in undertaking these acts, and not doing so because he was confused or mistaken.

Finally, the evidence should be admitted to explain the FBI's decision to arrest the defendant.   The Third Circuit has explained that Rule 404(b) evidence is not limited to prove "*the defendant's* motive, opportunity, or intent."   *See Green*, 617 F.3d at 251 (emphasis original) (citing *United States v. Scarfo*, 850 F.2d 1015, 1021 (3d Cir. 1988); Imwinkelried, *Uncharged Misconduct Evidence* § 6:12 (noting that other crimes evidence may be admissible "to explain the conduct of the police, . . . the victim, an informer, a government witness, or the defendant")).   Here, the defendant may argue that he was targeted because of his race, religion, or political views.   Admission of the

backpacks and their contents show that the government charged and arrested the defendant for legitimate law enforcement reasons.

## D. The Balancing Under Rule 403 Favors the Items' Admission

The evidence does not run afoul of Rule 403.   Exclusion under Rule 403 is "extraordinary," and should be applied sparingly.   *See Terzado-Madruga*, 897 F.2d at 1117.   The backpacks and their contents are hardly the type of evidence that is typically excluded under Rule 403.

In *Green*, the defendant was charged with attempted possession of a kilogram of cocaine with intent to distribute.   617 F.3d at 250.   The Third Circuit held that a district court *did not* abuse its discretion in admitting evidence regarding the defendant's efforts to acquire dynamite in order to kill an undercover officer involved in an earlier case, because the evidence helped explain the conversations between the defendant and a cooperator, and to explain the cooperator's motives in assisting law enforcement.   *Id.* at 250-51.

27

The evidence here is hardly of such an inflammatory nature. In fact, possession of these items, the defense is likely to point out, is not illegal and, standing alone, would not constitute a crime.

*United States v. Cunningham*, 694 F.3d 372, 388-92 (3d Cir. 2012), also does not bar admission of the backpacks and their contents. There, the court found that the admission of certain images of child pornography which, although intrinsic, was highly prejudicial. In that case, the defendant stipulated that the material was child pornography, and that anyone possessing it knew that. His only defense was that he did not possess the materials. The Third Circuit held that the probative value was slight, while the prejudicial impact of displaying two "loathsome" clips merited a new trial.

Here, the evidence is far from loathsome or objectionable. The defendant might nevertheless argue that the jury will convict him because it will think he was on the verge of an attack. There is no evidence, and the government will not argue, that an attack by the defendant was imminent. Rather, the possession of the items shows the various steps the defendant took to realize his goal of becoming an

28

ISIL fighter and facilitator. For these reasons, the danger of unfair prejudice does not substantially outweigh the items' probative value. *See United States v. Cross*, 308 F.3d 308, 325 (3d Cir. 2002) ("Rule 403 does not provide a shield for defendants who engage in outrageous acts . . . .").

## Conclusion

WHEREFORE, the defendant's motion *in limine* to exclude two backpacks and the items contained therein (Rec. Doc. 78) should be denied, and the defendant's motion *in limine* concerning that targeting of Junaid Hussain by a drone (Rec. Doc. 83) should be dismissed as moot.

Respectfully submitted,

BRUCE BRANDLER
Acting United States Attorney

Dated:   January 13, 2017         /s/ Daryl F. Bloom
DARYL F. BLOOM
Assistant United States Attorney
PA 73820

29

228 Walnut Street, P.O. Box 11754
Harrisburg, Pennsylvania 17108
717/221-4482 (Office)
717/221-2246 (Fax)
Daryl.Bloom@usdoj.gov



   /s/ Robert Sander   
ROBERT J. SANDER
Trial Attorney
PA 82116

U.S. Department of Justice
National Security Division
Counterterrorism Section
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
202/307-1102 (Office)
Robert.Sander@usdoj.gov



   /s/ Adam Small   
ADAM L. SMALL
Trial Attorney

U.S. Department of Justice
National Security Division
Counterterrorism Section
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
202/616-2431 (Office)
Adam.Small@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | CR. NO. 1:15-CR-309 |
| | : | |
| v. | : | (Chief Judge Conner) |
| | : | |
| **JALIL IBN AMEER Aziz**, | : | (electronically filed) |
| Defendant. | : | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he is an employee of the United States Department of Justice and is a person of such age and discretion as to be competent to serve papers.   That on this Friday, January 13, 2017, he served a copy of the attached

## OPPOSITION TO DEFENDAT'S MOTIONS *IN LIMINE*

by electronic means sent to the Defendant's attorney at the following address:

Addressee:
Thomas Thornton, Esq.
Thomas_Thornton@fd.org

    /s/ Adam Small
ADAM L. SMALL
Trial Attorney

U.S. Department of Justice

31