UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

_____

**UNITED STATES OF AMERICA**

**v.**

**JALIL IBN AMEER AZIZ,**

        Defendant.

**No. 1:15-CR-309**

**MEMORANDUM OF LAW**

_____

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION FOR MODIFICATION OF SENTENCE BASED
ON EXTRAORDINARY AND COMPELLING REASONS**

Jalil Aziz, by undersigned counsel, submits the instant Memorandum of Law

in support of his motion for a modification of his sentence based on extraordinary

and compelling reasons, which include his high risk from COVID-19 based on his

obesity and asthma.

The current COVID-19 epidemic poses an extraordinary and compelling

reason to release Mr. Aziz. Over the past year or so, courts have granted

compassionate release to many of these highly vulnerable prisoners. Although the

risk may not be as high now as it was before vaccination began, there is still a real

risk. The danger comes from COVID variants which may be resistant to the

1

vaccine; and from breakthrough infections[1]. There is also a real risk to those (such as Mr. Aziz[2]) who are not vaccinated and/or are in facilities where many inmates and staff are not vaccinated.

Because COVID-19 spreads so rapidly through congregate settings, especially prisons, the Bureau of Prisons was unable to prevent infections from spreading to all of its facilities, and was unable to prevent many deaths. On April 1, 2020 there were 57 cases where inmates had tested positive for the virus in federal prisons; as of June 28, 2021, that number is 44,295. FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited 6/29/21) (the number represents the total number of BOP inmates who have tested positive including those who have recovered). *240 BOP inmates have died from COVID-19, with two deaths occurring recently, on June 17, 2021. Id;*

https://www.bop.gov/resources/press_releases.jsp.

**Defendant's Underlying Case**

Jalil Aziz was convicted via a guilty plea, of Conspiracy to Provide Material Support to a Designated Foreign Terrorist Organization, under 18 USC 2339B, and

---

[1] See https://www.cdc.gov/mmwr/volumes/70/wr/mm7021e3.htm , a Report entitled "COVID-19 Breakthrough Infections Reported to CDC – United States, January 1- April 1, 2021

[2] Upon information and belief, Mr. Aziz was offered the vaccine, but declined. As discussed below, this is unfortunately common, as nearly 50% of inmates – and staff – are wary of the COVID vaccines and have not been in any hurry to get them.

Transmitting a Communication Containing a Threat to Injure, under 18 USC 875(c). Mr. Aziz was sentenced to 160 months in late 2017. He has served over five years at this point (since 12/17/15), and is scheduled to be released in six more years, in April, 2027. Thus he has served almost half of his sentence.

Certainly the offense was very serious, but, as discussed in the defense sentencing memorandum, Mr. Aziz was very young at the time, and had been kept isolated from the world by an overly controlling mother. She had pulled him out of school after the fourth grade, and homeschooled him, although he only ended up completing the eighth grade by the time he was 18 years old. (Defense Sentencing Memorandum, at 5) He never had a driver's license, passport or bank account. (Id, at 4) In fact, Jalil had no friends, had never worked, wasn't allowed to interact with anyone outside the household, and could only use the telephone and family computer with supervision. (Id, at 6)

Unfortunately, in an attempt to lessen his isolation, Jalil's sister, Shahida, a correctional officer at Riker's Island, got him an iphone. (Id, at 7) Jalil, lonely, depressed, and heretofore cut off from the world, dived into the internet. Tragically, he became immersed in the self-reinforcing world of ISIS propaganda. Jalil started reposting this hateful material on Twitter, and he also interacted a bit with people who said they were interested in traveling to join the group.

However, luckily, Jalil never actually was able to accomplish anything with his efforts. As pointed out in the Sentencing Memo, it is hard to imagine that anyone traveling from Turkey to Syria would be in need of a 17-18 year-old in Virginia to send them a google map. His efforts at fundraising were completely unsuccessful, and his reposts of the famous "hit list" were but a small drop in the bucket.

While Jalil had apparently tried to follow the ISIS propaganda telling him he should have a backpack with materials ready in case he had to flee, his attempts at doing this were seriously underwhelming. He included some ammunition he took from his father (who had considered buying a gun but then abandoned the plan), a ski mask, a kitchen knife with a broken handle, a thumb drive, a lighter, gloves, a toothbrush, and a pocket watch. A Boy Scout he was not, let alone an ISIS operative.

While Jalil was not able to actually contribute anything to ISIS, the offense was still very serious, and merited a prison sentence. The Court was somewhat lenient, sentencing him to 160 months, higher than the 51-63 month range sought by the defense, but lower than the twenty-five years sought by the government.

As discussed below, in addition to the compelling mitigating factors presented at the time of sentencing, Mr. Aziz now has an excellent record of rehabilitation in prison. (See Exhibit "C") Moreover, fortuitously, his brother,

Ibrahim Aziz, is the Executive Director of HOPE Diversified Management, which provides reentry services to formerly incarcerated people – significantly, these services include deradicalization assistance/therapy from experts in the field. (See letter from Ibrahim Aziz, attached as Exhibit "D")

Ibrahim Aziz wrote about how he will be able to support his brother in multiple ways upon his release, including to provide him with "deradicalization" services to help him avoid the warped thinking which led to the instant offense. (Exhibit "D" at 1-2)

**Case of Ardit Ferizi**

Interestingly, the person who obtained (via computer hacking) the "hit list" which Mr. Aziz was convicted of sharing, Ardit Ferizi, was recently granted compassionate release based on COVID risk *due to having asthma and obesity. Release was granted even though he had only served about five years of a twenty year sentence.* United States v. Ferizi, 1:16-cr-042 (EDVA 2020)

The *Ferizi* court stated:

> "…Defendant … was diagnosed with *asthma* in 2018. … The CDC has acknowledged that '[h]aving moderate-to-severe asthma might increase your risk for severe illness from COVID-19' … Defendant's obesity is yet another factor that places him at greater risk for severe illness – the CDC has warned that having a body mass index greater than 30 is a risk factor, and defendant's *BMI has fluctuated between 30 and 31* during his incarceration. Considering these multiple risk factors, the government has conceded that 'Ferizi … has established 'extraordinary and compelling circumstances' to justify release…
> ***

*…There is no doubt that defendant committed a serious offense when he provided the personal information of US government and military employees to ISIL, and …his actions were harmful* to the individuals whose names appeared on the list…  Nevertheless, even defendants who have committed very serious offenses can be appropriately released … where '[t]here is no indication that defendant poses a risk to the public, and reducing defendant's sentence to time served will not diminish the seriousness of his offense or respect for the law.' *United States v. Lee*, 2020 WL 3422772, at *4 (E.D. Va. June 22, 2020)…

*In this case, defendant's offense did not involve violence*, and none of the individuals whose information he gave to ISIL suffered physical harm. *Defendant has explained that he 'totally and completely oppose[s] ISIL and all it stands for,' and that immaturity rather than ideology was the primary motivator for the crime. [Defendant stated] '… I was mostly focused on trying to show off* my hacking skills to people I had met online…' Defendant had *no significant criminal history before his arrest for his present offenses, which he committed when he was only 19 years old. He has incurred only minor infractions while in BOP custody, … all of which were more than two years ago. He completed educational courses… and has been rated by BOP staff as a 'low' risk for recidivism*.

The government argues that the evidence that defendant is unlikely to reoffend is inadequate given that he will be 'released to a foreign jurisdiction' where 'there would be no way for the Court to monitor his behavior…'…" *Ferizi*, supra, at 4-8, emphasis supplied.

As in *Ferizi,* Jalil Aziz is at risk from COVID-19 due to his asthma and obesity. Like Mr. Ferizi, Mr. Aziz' offense was serious, but he has done well in prison and is rated low risk by BOP. (Exhibit "C" at 1-3)

It is submitted that by actually obtaining the "hit list" and providing it to ISIS, Mr. Ferizi was significantly more culpable than Mr. Aziz. And in contrast to Mr. Ferizi, who had only served about 25% of his sentence when he was granted release, Mr. Aziz has served close to half of his sentence.

6

**Mr. Aziz has exhausted his administrative remedies under 18 USC 3582(c)(1)(a)**

Mr. Aziz is currently incarcerated, under BOP Register Number 73950-067, at the USP Marion. On March 2, 2021, he submitted an application for compassionate release under § 3582(c)(1)(A)(i) to the warden of his facility. (Compassionate Release Application attached as Exhibit "A" at 1). As it has been more than 30 days since the warden received Mr. Aziz's request, he has exhausted his administrative remedies under 18 USC 3582(c)(1)(a), which provides that the court may act 30 days after the warden receives the application. *See, inter alia, United States v. Brooker*, 2020 US App. LEXIS 30605 (2nd Cir. 2020.)

**Medical Issues**

**Obesity**

Mr. Aziz is clearly at risk because he is obese. The CDC has stated that anyone with a BMI (Body Mass Index) higher than 30.0 faces a *clear, known risk* of serious complications from COVID-19.

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#obesity

Jalil Aziz's medical records show that he is obese, with a BMI of 31, as of 5/11/2020 (the most recent BMI reading counsel has obtained.)   (Medical Records attached as Exhibit "B" at 3)

7

**Asthma**

In addition to his obesity, Mr. Aziz suffers from moderate-severe asthma, for which he requires daily use (four times each day) of an inhaler. (Exhibit "B" at 1-3)

Moderate-severe asthma such as Mr. Aziz has is also a risk factor for serious complications from COVID-19.

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#asthma

**Institutional History**

Jalil Aziz has an excellent record of rehabilitation while in prison over the past five years. He is rated low security by BOP, with no disciplinary infractions, no history of any substance abuse, and a lot of family support. (Male Custody Classification Form, attached at Exhibit "C" at 1) His rating would be even lower were it not for his young age, which resulted in 8 security points. (Exhibit "C" at 1) That document also notes that the prison should consider decreasing his security level. (Exhibit "C" at 1)

In addition, Mr. Aziz, who, as noted above, was kept at home and not provided with education beyond the eighth grade, is currently in the midst of a GED program, which he is due to complete by March, 2022. (Exhibit "C" at 2-3) He also successfully completed two educational courses in 2019 (Nutrition and

Cosmic Oddyssey) and is employed in the prison as a food service worker.

(Exhibit "C" at 2)

**ARGUMENT**

**POINT I**

**THE RISK POSED BY COVID-19 IS AN EXTRAORDINARY
AND COMPELLING REASON TO REDUCE
PETITIONER'S SENTENCE TO TIME SERVED**

A court may reduce a sentence imposed when "extraordinary and

compelling reasons" warrant reduction and when "such a reduction is consistent

with policy statements issued by the Sentencing Commission." 18 U.S.C. §

3582(c)(1)(A)(i). A court granting reduction must also "consider the sentencing

factors set forth in 18 U.S.C. § 3553(a) 'to the extent they are applicable.'"

However, while the Third Circuit has not yet weighed in, other circuit courts

and district courts within the Third Circuit, have held that because the previous

policy statements were not updated since the passage of the First Step Act, there

are none which currently apply. *United States v. Brooker*, 96 F.3d 228 (2nd Cir.

2020); *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020); *United States v.

Brown*, 2021 WL 374531 (6th Cir. 2021); *United States v. Gunn*, 980 F.3d 1178 (7th

Cir. 2020); *United States v. McGee*, 992 F.3d 1035 (10th Cir. 2021); *United States

v. Shkambi*, 2021 U.S. Dist. LEXIS 82799 (5th Cir. 2021); *United States v Aruda*,

993 F.3d 797 (9th Cir. 2021); *United States v. Avery*, 2021 U.S. Dist. LEXIS

9

46306 (EDPA 2021); *United States v. Reed*, 2021 U.S. Dist. LEXIS 44674 (WDPA 2021.)

The risk posed by COVID-19 constitutes an extraordinary and compelling reason to reduce the sentence of a defendant who is particularly vulnerable to serious illness or death from the virus due to underlying medical conditions. Many courts, including in this district, have granted such motions. See. i.e. *United States v. Foster*, 2020 U.S. Dist. LEXIS 82985 (MDPA 2020); *United States v. Ferizi*, 1:16-cr-042 (EDVA 2020) (a terrorism case where the defendant was convicted of hacking personal information of US military and law enforcement members and giving it to ISIS.)

 Mr. Aziz is acutely vulnerable to serious illness or death from COVID-19, as he suffers from obesity and asthma. As numerous courts have observed, the nature of a prison setting puts inmates at great risk of catching coronavirus as it is impossible for inmates to adequately protect themselves from the virus through social distancing.

While vaccination has certainly lowered COVID-19 case rates and death rates within prison, BOP inmates *have been continuing to die from the disease.* There were two deaths from COVID-19 on June 17, 2021, one at USP Victorville, and one at FMC Carswell. (See https://www.bop.gov/resources/press_releases.jsp, last accessed June 22, 2021.) Prior to that, there were COVID-19 deaths this spring

10

on June 2, May 25, May 21, May 14, April 29, April 20, April 19, April 7 (two deaths), and March 29. https://www.bop.gov/resources/press_releases.jsp (Pages 1-2)

CNN reported that prison inmates have been found to be twice as likely to die of COVID-19 than those on the outside. https://www.cnn.com/2020/09/02/us/prison-coronavirus-clusters-report/index.html And *at least 54 prison inmates died from COVID-19 while their compassionate release motions were pending*. See

https://www.vice.com/en/article/jgq7ny/prisoners-keep-dying-of-covid-while-compassionate-releases-stall-in-court

A May 31, 2021 article in Forbes Magazine entitled "*Even After Vaccine, Federal Prisons Still Have COVID-19 Concerns*" cited an article in the New England Journal of Medicine for the proposition that vaccination is not enough to stop the spread of the virus in prisons – there must be a continued lowering of the prison population. https://www.forbes.com/sites/walterpavlo/2021/05/31/even-after-vaccine-federal-prisons-still-have-covid-19-concerns/?sh=531c50e22bea

The article stated:

> "…The vaccine was made available to inmates and BOP staff earlier this year. *The number of vaccinations has not been impressive, …*[it] *hovers around 50% for both inmates and staff*… However, even if those vaccination numbers increase, a recent study suggest that that might not be enough to control infections in prison.
> ***
> An article published in March in the New England Journal of Medicine (NEJM), "*Vaccination plus Decarceration – Stopping COVID-19 in Jails and Prisons*, highlighted a problem for those in prison, even if they are vaccinated, stating, '…even a vaccine with seemingly adequate

11

efficiency, pace and coverage may be insufficient to alter the fundamental population dynamics that produce high disease prevalence.'

*\*\**

…In environments like prisons, where there are so many un-vaccinated people, living in close concentrated areas, vaccines, even those with high efficiency rates, may not be able to keep up with the reproduction of a COVID-19 viral spread. … *The only read solution then would be to continue with some plan that leads to a reduction of the prison population.*" (emphasis supplied)

**Cases Where Compassionate Release was Granted**

By the end of 2020, courts had granted 2,549 compassionate release motions. https://sentencing.typepad.com/sentencing_law_and_policy/2021/06/us-sentencing-commission-releases-fascinating-and-bare-bones-compassionate-release-data-report.html  By now, the number of grants must be well over 3,000.

While it is true that Mr. Aziz declined the vaccine, that should not, for the reasons discussed above, prevent this Court from granting his motion. In *United States v. Brown*, 2021 US Dist. LEXIS 91312 (WDPA 2021) the District Court for the Western District of Pennsylvania recently granted release to a defendant who had likewise declined the vaccine. Like Mr. Aziz, the *Brown* defendant was obese and suffered from asthma.

There are also many courts which have even granted release to inmates who had been vaccinated. See, i.e. *United States v. Darby*, 2021 U.S. Dist. LEXIS 113267 (NDOH June 17, 2021); *United States v. Reyes*, 2021 U.S. Dist. LEXIS 99864 (DCT 2021) (granting compassionate release of defendant who received

both doses of the vaccine; "newly available data describe 'breakthrough infections' caused by COVID variants in vaccinated populations"); *United States v. Pappa*, 2021 U.S. Dist. LEXIS 75976 (SDFL 2021) (even though she "has received a COVID-19 vaccine, [Ms. Pappa] submitted evidence that the vaccine may not be completely effective in persons with obesity"); *United States v. Manglona*, 2021 U.S. Dist. LEXIS 42104 (WDWA 2021); *United States v. Bradshaw*, No. 1:96-CR-10032-DPW (D. Mass. Mar. 4, 2021) (granting compassionate release to defendant who had received both Moderna vaccine doses); *United States v. Hatcher*, No. 18 CR. 454-10 (KPF), 2021 U.S. Dist. LEXIS 74760 (SDNY, 2021.)

In addition, in *United States v. White*, 2021 U.S. Dist. LEXIS 15318 (MDTN 2021) the court granted compassionate release, stating, "…just this month variants to the SARS-CoV-2 strain were identified that may (or may not) allow the virus to spread more quickly, lead to "more severe or less severe illness," and "evade vaccine-induced immunity.")

There are many cases where people were granted compassionate release based on the risk posed by obesity and/or asthma. *United States v. Boddie*, 2021 U.S. Dist. LEXIS 11741 (SDIN 2021) (man with *life sentence* granted release based on the COVID risk due to his obesity and asthma); *United States v. Ferizi,* supra (compassionate release granted in a *terrorism case* where the defendant is *young but suffers from moderate-severe asthma and obesity, and had more than 10*

13

*years left on his sentence*); *United States v. Yepremian*, 2021 U.S. Dist. LEXIS

24428 (SDTX 2021)(man with obesity and other conditions who *had only served a*

*quarter of his 120 mo. sentence*); *United States v. Hargrove*, 2021 U.S. Dist.

LEXIS 9349 (DCT 2021) (man with obesity and asthma granted compassionate

release despite his lengthy criminal history and the coming availability of the

COVID vaccine); *United States v. Greenhow*, 2020 U.S. Dist. LEXIS

236289 (DNJ 2020) (grant based on risk from obesity and asthma); *United States*

*v. Rios*, 2020 U.S. Dist. LEXIS 230074 (DCT 2020) (release granted for man

serving *three life sentences based on risk from obesity, asthma and hypertension*);

*United States v. Mays*, 2020 U.S. Dist. LEXIS 215786 (SDIN 2020) (release

granted based on risk from *obesity and hypertension despite only a few cases in his*

*facility*.)

In *Boddie*, supra, where the defendant was serving a *life* sentence, the court

stated:

> "The United States concedes that Mr. Boddie is obese, with a Body Mass Index ("BMI") of at least 31.  The CDC (Centers for Disease Control and Prevention) recognizes that … being obese … [puts him] …at increased risk of experiencing severe symptoms [from] COVID-19. … Mr. Boddie has also been diagnosed with asthma and has been prescribed an inhaler to treat that condition. The CDC has identified moderate-to-severe asthma as a condition that may increase the risk of severe COVID-19 symptoms. …
> 
> ***
> 
> …[T]he Court has concluded that Mr. Boddie's medical conditions combine with the risks posed by the COVID-19 pandemic to create an

14

extraordinary and compelling reason warranting a sentence reduction…" *Boddie*, at 5-6, 15.

Based on the foregoing, this Court should find that despite his declination of the vaccine, Mr. Aziz's medical conditions, along with the easy transmissibility of the virus in prison, and the possibility of a new outbreak, put him at great risk for COVID-19 complications, and that this constitutes an extraordinary and compelling reason under 18 USC 3582(c)(1)(A).

## <u>POINT II</u>

### THE 18 USC 3553(a) FACTORS SUPPORT RELEASE

When considering motions for compassionate release, 18 U.S.C. § 3582(c)(1)(A) requires courts to consider the applicable factors from 18 U.S.C. § 3553(a) "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). The applicable factors from 18 U.S.C. § 3553(a) include in relevant part: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant" and "(2) the need for the sentence imposed--(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner…" Courts should also consider "the need to avoid unwarranted sentence disparities among defendants

15

with similar records who have been found guilty of similar conduct." 18 U.S.C. §
3553(a). These factors weigh heavily in favor of defendant's motion for
compassionate release.

Defendant's history and characteristics support his release. Jalil Aziz has
*absolutely no criminal history*. He was only 17 and very sheltered and naïve when
he discovered ISIS propaganda on the iphone his sister gave him, and was only 19
when he was arrested. As discussed above, he has an excellent institutional history.
(See Exhibit "C")

### Terrorism Cases Where Compassionate Release was Granted

While the nature of the offense Defendant was convicted of is undoubtedly
serious, a sentence of time served fully reflects the seriousness of the offense.
Several courts have recently granted compassionate release to defendants
convicted in terrorism cases. *United States v. Ferizi*, supra; *United States v. Ali*,
2021 U.S. Dist. LEXIS 73320 (DMN 2021); *United States v. Hassan*, 2020 U.S.
Dist. LEXIS 165638 (DMN 2020) (defendant convicted at trial of material support
to Al-Shabab); *United States v. Hassoun* 470 F. Supp.3d 804 (NDIL 2020)
(compassionate release granted in a terrorism case to a young defendant who
*served less than 10 years of his 23-year sentence* despite the defendant's facility
having no confirmed COVID-19 cases at the time); *United States v. El-Hanafi*, 460
F. Supp.3d 502 (SDNY 2020) (granting compassionate release in a terrorism

16

material support conspiracy case to a defendant who served around 10 years of his 15-year sentence); *United States v. Tajideen*, 1:17-cr-046 (DDC May, 2020) (granting compassionate release in a terrorism financing case to a defendant who served around three years of a five-year sentence).[3] The sentence that Defendant already served is sufficient to promote respect for the law and to provide just punishment for the offense. *See United States v. Hossain*, 2020 WL 3265001, at *5 (N.D.N.Y. June 8, 2020) ("Fulfilling nearly all of his original sentence supports a finding that the term of imprisonment will serve the purposes of recognizing the seriousness of the crime [of material support to a foreign terrorist organization] and providing adequate punishment.").

**Recidivism Rates for Terrorism Cases**

Because of the serious nature of the charges in terrorism-related cases, it is often believed that there is a high risk to the public when these defendants are released. However, undersigned counsel has compiled a list of the 44 cases where the defendants were convicted of terrorism offenses (and placed on the DOJ list of terrorism convictions); served at least a ten-year sentence; and then were released[4],

---

[3] The Northern District of New York also granted compassionate release to a defendant serving 15 years for, among other things, conspiracy and material support to a foreign terrorist organization. While the defendant there had little over a month remaining of his sentence, the court blamed the BOP for this, rebuking the agency for its "dilatory conduct and changing standards for release." *United States v. Hossain*, 2020 WL 3265001, at *5 (N.D.N.Y. June 8, 2020) ("Indeed, the reason that the Defendant only has a little over a month remaining on his sentence when the Court is considering his motion has more to do with the Bureau of Prison's dilatory conduct and changing standards for release than with the seriousness of his offense.")

[4] For the purposes of this list, counsel looked for those who had been released after January 1, 2004, as that time period tended to correspond with the cases on the DOJ terrorism list (listing convictions since 2001), although it also included a handful of cases that predated 2001.

either to live in the United States, or to be deported to another country. (The list does not even include the cases where compassionate release was granted this year, as not a lot of time has passed since their release. However, it is extremely likely that they will also continue to live productive, law-abiding lives.)

There are many more cases where defendants were convicted of terrorism-related offenses, were sentenced to *less than 10 years*, and have since been released. It appears that none of them have engaged in any subsequent major crime (or any terrorism) either, but they were not included on this list, both because there were so many of them, and because it seemed to makes sense for comparison purposes to look at those who had served a fairly lengthy sentence, showing that the sentencing court believed the offense to be serious.

It appears that *not a single one of the 44 people has been implicated in any terrorism-related activity, or any other major crime*[5]. (It is submitted that if that were the case, it would likely have come up in a google search using the defendant's name and conviction, and/or been widely reported.) Moreover, counsel is aware of the circumstances of many of these defendants, both in the United States and abroad, and they are generally doing very well, and do not appear to pose any risk of recidivism. Thus it is submitted that the recidivism rates of those

---

[5] Counsel is not even aware of any of them having been charged or convicted or any minor offenses, although that is more difficult to know.

18

convicted of terrorism-related offenses is far lower (to non-existent) in comparison to other offenses.

The list is attached as Exhibit "E" and it includes many cases with more egregious offense conduct than the instant case – many of the defendants (often in sting operations) had the intent to engage in some sort of attack, but they no longer have that intent, or hold those ideas. Many of the defendants are United States citizens and are living their lives productively in this country without any problems. Others have been deported to other countries where they are likewise living their lives peaceably.

Mr. Aziz has been rehabilitated, as displayed through his excellent prison record, and the letter from his brother. He will also receive a great deal of support upon release, including mental health services and employment. In addition, he will be monitored by the Probation Department during his term of supervised release.

In his letter to the Court, Mr. Aziz' brother, Ibrahim, recently stated:

> "Since my brother's incarceration we have developed a closer relationship, albeit by phone and written communication. I sincerely believe that his absence from the home and being able to reflect on [his] circumstances … has seemed to open his eyes and heart… He seems to be developing into a man without the toxicity or uncertainty that existed in our household for so many years. *He is developing his own thoughts, opinions and [a] clearer picture of the world*. It is what I call a balanced sense of self.
> When Jalil is released from incarceration, he will be welcomed by a brother and a host of committed individuals who are ready to assist him become acclimated to society. In addition, he will also have access to a team

of experts ready to assist him and provide him social and therapeutic services that will help him in altering his 'warped' ideology in order to become a productive member of society. …Jalil will have exposure to leading … experts in the field of deradicalization and mental health. … …HOPE Board Member, Kareem Abdus-Salam is procuring meaningful employment for Jalil…" (Exhibit "D" at 1,emphasis supplied)

Finally, the need to avoid unwarranted sentencing disparities is in no way frustrated by a sentence reduction to time served. Given the unexpected circumstances of a global pandemic and Defendant's particular vulnerabilities, a reduction in that sentence does not create a disparity in sentencing. And, as noted above, compassionate release has been granted many similar cases.

Based on the foregoing, it is submitted that the 18 USC 3553(a) factors support a reduction of Defendant's sentence.

## CONCLUSION

For the foregoing reasons, this Court should reduce Jalil Aziz's sentence to time served based on extraordinary and compelling reasons due to the great risk COVID-19 poses to his because of his underlying medical conditions.

Dated: June 29, 2021

Respectfully submitted,

*Kathy Manley*
KATHY MANLEY
(*pro hac vice* admission pending)
NY Bar Roll No. 3935467
Attorney for *Jalil Aziz*

20

26 Dinmore Road
Selkirk, NY 12158
(518) 635-4005 (phone and fax)
Mkathy1296@gmail.com