UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA  :

                        :  No.: 1:15-CR-00309

      v.                   :

                        :

JALIL IBN AMEE AZIZ      :  (J. CONNER)
      Defendant       :

## <u>GOVERNMENT'S RESPONSE TO DEFENDANT'S<br>MOTION FOR COMPASSIONATE RELEASE</u>

The defendant Jalil Ibn Amee Aziz is a 24-year-old federal inmate located at the United States Penitentiary – Marion ("USP – Marion"). Aziz has filed a motion requesting release under 18 U.S.C. § 3582(c)(1)(A) based upon the COVID-19 pandemic.  He is currently serving a 160-month sentence after being convicted of Conspiracy to Provide Material Support and Resources to a Designated Foreign Terrorist Organization and Attempt to do the same, both in violation of 18 U.S.C. § 2339B(a)(1).  Aziz has a release date of April 27, 2027.  For the reasons detailed in this memorandum, the United States respectfully opposes the motion and requests that this Court deny the motion.

## I.    BOP'S RESPONSE TO COVID-19

The core facts regarding the COVID-19 pandemic are known to the Court.  The history of the outbreak and its ongoing effect on the world, the nation, and Pennsylvania will not be repeated at length here and are not substantially in dispute. There is no question that the public health challenges presented by COVID-19 are serious and rapidly evolving, and they are placing unprecedented demands on our health systems, governmental institutions, and correctional facilities. The Court is also aware of the efforts made by the BOP over these months to keep inmates and staff safe. Further details and updates of BOP's modified operations are available to the public on the BOP website at a regularly updated resource page: https://www.bop.gov/coronavirus/

As of the preparation of this brief, USP – Marion reports that eight inmates and no staff member at the facility are currently positive for COVID-19.  Seven-hundred and four inmates and sixty-one staff who previously tested positive have since recovered.  Two inmate deaths have been reported. *Id.*  Eight-hundred forty-four inmates at the location have been fully vaccinated. *Id.*

## II.    ARGUMENT

## A. Legal Standard

After a federal criminal sentence has been imposed, a district court has only limited authority to modify that sentence. *Dillon v. United States*, 560 U.S. 817, 825 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). The First Step Act provides one such circumstance by authorizing the sentencing court to grant compassionate release for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). That statute provides, in relevant part:

> (c) Modification of an imposed term of imprisonment. The court may not modify a term of imprisonment once it has been imposed except that –
>
> (1) in any case –
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without

conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –

(i) **extraordinary and compelling reasons warrant such a reduction** . . . .

18 U.S.C. § 3582(c)(1)(A) (emphasis added).  Thus, a defendant seeking a reduction in his term of imprisonment under the First Step Act has the burden of demonstrating both (1) that he has satisfied the procedural prerequisites for judicial review[1] and (2) that extraordinary and compelling reasons exist that would justify compassionate release. *United States v. Epstein*, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020).

The United States Sentencing Guidelines Manual sets forth the policy statement for compassionate release in § 1B1.13.  It provides that a defendant must show three things to establish eligibility for sentencing modification: (1) extraordinary and compelling reasons that indicate modification is appropriate; (2) defendant is "not a danger to the safety of any other person or to the community;" and (3) "reduction is consistent with this policy statement."  1B1.13(1)-(3).  The definition

---

[1] Aziz appears to have appropriately exhausted his administrative remedies.  Def. Ex. A, 3.

of "extraordinary and compelling circumstances" can be found in the application notes.  *See* § 1B1.13 cmt n.1(A)-(D).

### B. Aziz Fails to Present Extraordinary and Compelling Reasons to Warrant a Sentencing Reduction.

The Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 2020 WL 1647922 at *2 (3d Cir. Apr. 2, 2020), as revised (Apr. 8, 2020); *see also United States v. Eberhart*, 2020 WL 1450745 at *2 (N.D. Ca. March 25, 2020) ("a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A).").

In May 2020, the Department of Justice refined its position on compassionate release as follows: "under present circumstances, an inmate's diagnosis with a medical condition that the CDC has identified as a risk factor for COVID-19, and from which the inmate is not expected to recover, presents an 'extraordinary and compelling reason[]' that may warrant compassionate release if other criteria are also met. 18

U.S.C. 3582(c)(1)(A); *see, e.g., United States v. Pabon*, No. 17-CR-165, 2020 WL 2112265, at *3 (E.D. Pa. May 4, 2020) (noting and agreeing with Government's position); *see also* Sentencing Guidelines § 1B1.13(2) (court must also determine that the inmate 'is not a danger to the safety of any other person or to the community'); 18 U.S.C. 3582(c)(1)(A) (court must consider the 18 U.S.C. 3553(a) factors, as 'applicable,' as part of its analysis).

The Center for Disease Control and Prevention (CDC) has identified risk factors, including underlying medical conditions, that place individuals at a higher risk of severe outcomes from COVID-19. *See* Center for Disease Control, "People With Certain Medical Conditions" at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.  The CDC, as of December 2020, updated the list of underlying medical conditions that increase the risk of severe illness should an individual with such a condition contract COVID-19.

Aziz notes that he suffers from obesity and moderate to severe asthma.  Def. Ex. B, 1-3.  The CDC has recognized that obesity and moderate to severe asthma put Aziz at a uniquely high risk of adverse effects if he contracts COVID-19.

Despite the risk factors, Aziz no longer presents an "extraordinary and compelling reason," because he has declined vaccination.

Staff at USP-Marion have confirmed that the defendant refused the COVID-19 vaccine when offered it on March 2, 2021.  Aziz presents no known medical contraindication for the vaccine. His motion for compassionate release should be denied for this reason.

As the government has explained, the pertinent guideline policy statement treats as an "extraordinary and compelling" circumstance "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 app. note 1(A)(ii).  The government during the pandemic has acknowledged that an unvaccinated inmate who presents a medical risk factor identified by the CDC as increasing the

7

risk of an adverse outcome from COVID-19, and who is not expected to recover from that condition, presents an extraordinary and compelling circumstance under that provision.

That circumstance now does not exist in this case. The defendant has been offered a vaccine approved by the FDA for emergency use based on its conclusion that, in extensive testing, the vaccine was approximately 95% effective in preventing COVID-19 infection, including in participants with medical comorbidities associated with high risk of severe COVID-19. *See* FDA Decision Memorandum, Moderna - Dec. 18, 2020, https://www.fda.gov/media/144673/download.

The CDC recently reported the effectiveness of the Pfizer and Moderna vaccines in preventing infection during the same period, and concluded that its extensive data "reinforce CDC's recommendation of full 2-dose immunization with mRNA vaccines. COVID-19 vaccination is recommended for all eligible persons . . . ." "Interim Estimates of Vaccine Effectiveness,"
https://www.cdc.gov/mmwr/volumes/70/wr/mm7013e3.htm (Mar. 29, 2021).

A study issued on April 28 and reported by the CDC found that the efficacy rate of the Pfizer and Moderna vaccines was the same (approximately 94%) in the population over the age of 65 as in the population of adults as a whole, showing the effectiveness of the vaccines even in a group that is particularly vulnerable to severe outcomes.

https://www.cdc.gov/mmwr/volumes/70/wr/mm7018e1.htm?s_cid=mm70 18e1_w (last accessed May 2, 2021).

Even more significantly, thus far, the vaccines are proving remarkably effective not just in limiting infection, but in fulfilling their most important purpose: limiting severe disease and death. The CDC tracks "breakthrough" infections after full vaccination. *See* https://www.cdc.gov/vaccines/covid-19/health-departments/breakthrough-cases.html (last accessed July 3, 2021). It states that as of June 28, over 154 million people had been fully vaccinated with one of the three approved vaccines, and among those people the CDC recorded only 4,427 hospitalizations, and 879 deaths (223 of which were asymptomatic or not related to COVID). That means

that the risk of death in this group after full vaccination, with a symptomatic case of COVID-19, was about 1 in 234,000, a chance far below the ordinary health risks commonly faced by inmates and all others.

Thus, the defendant, notwithstanding the risks he presents, does not present any extraordinary and compelling reason allowing compassionate release. He has elected to decline the vaccine, forgoing the opportunity for "self-care" that BOP made available. For this reason, the motion should be denied. In short, "[n]ow that COVID-19 vaccinations are being administered throughout the Bureau of Prisons, compassionate release motions generally lack merit." *United States v. Reed*, 2021 WL 2681498, at *4 (E.D. Pa. June 30, 2021) (Schmehl, J.). "Courts now widely recognize that a refusal to take preventative measures to protect oneself from COVID-19 undermines any assertion that the risk of viral infection constitutes an extraordinary and compelling reason justifying release." *United States v. Downer*, 2021 WL 2401236, at *2 (D. Md. June 11, 2021) (Gallagher, J.).

"The glaring consensus among district courts is that refusal of a COVID-19 vaccine subverts a defendant's compassionate release motion." *United States v. Sawyers*, 2021 WL 2581412, at *4 (C.D. Cal. June 22, 2021) (Lew, J.). *See, e.g., United States v. Baeza-Vargas*, 2021 WL 1250349, at *2-3 (D. Ariz. Apr. 5, 2021) (Teilborg, J.) ("Judges of this Court, as well as others around the country, have ruled with consistency that an inmate's denial of a COVID-19 vaccination weighs against a finding of extraordinary and compelling circumstances.") (citing more than a dozen cases); *United States v. Greenlaw*, 2021 WL 1277958, at *7 (D. Me. Apr. 6, 2021) (Woodcock, J.) (the court reviews CDC guidance and numerous other decisions and concludes, "The risk-benefit analysis in favor of inoculation is so overwhelming that the Court holds Mr. Greenlaw's refusal to be vaccinated against his motion for compassionate release."); *United States v. Ortiz*, 2021 WL 1422816, at *3 & *5 n.6 (E.D. Pa. Apr. 15, 2021) (Leeson, J.) (the court agrees with recent decisions that the defendant's "refusal to be vaccinated in the absence of a legitimate medical justification is fatal to his motion for compassionate release," adding, "common sense dictates that finding

11

otherwise would risk creating perverse incentives. Overlooking a medically at-risk petitioner's refusal of an available vaccine and granting him compassionate release would likely incentivize other medically at-risk prisoners to decline an offer of a vaccine, putting themselves and others at risk."); *United States v. Swindler*, 2021 WL 2374231, at *3 (D.S.C. June 10, 2021) (Coggins, J.) ("Although the Court respects both Mr. Swindler's concerns about side effects and his right to refuse vaccination, it cannot ignore the inconsistency of petitioning for compassionate release based on the risk of contracting COVID-19 while simultaneously refusing a highly effective medical intervention to reduce that risk. In short, Mr. Swindler may not manufacture his own 'extraordinary and compelling' circumstances."); *United States v. Strother*, 2021 WL 2188136, at *8 (E.D. Tex. May 27, 2021) (inmate who declined Johnson & Johnson vaccine "cannot be heard to complain about the dangers of COVID-19 in prison and then fail to take the available measures to mitigate the risk, such as being vaccinated.").

Thus, in *United States v. Jackson*, 2021 WL 1145903 (E.D. Pa. Mar. 25, 2021), the court denied relief even though the defendant was

58 years old and suffered from, among other conditions, obesity (BMI of

31.2), type II diabetes, hypothyroidism, hypertension, asthma, and high

cholesterol, explaining:

> However, Jackson was offered the Moderna COVID-19 vaccine on
> January 6, 2021 and elected not to be vaccinated. Thus it seems
> that Jackson has voluntarily declined to "provide self-care" and
> mitigate her risk of a severe COVID-19 infection. The FDA
> approved the Moderna vaccine for use after extensive testing,
> concluding that it is 95% effective in preventing infection and
> virtually entirely effective in preventing severe disease, including
> in participants with medical comorbidities associated with high
> risk of severe COVID-19. See Food and Drug Administration,
> Emergency Use Authorization,
> https://www.fda.gov/media/144673/download (Dec. 18, 2020).
> There is no apparent medical reason that Jackson should not
> receive the vaccine. It was offered to her by FCI Danbury's
> medical staff. As her medical records note, she merely "refused."
> Where Jackson bears the burden of demonstrating her
> entitlement to relief, the Court finds that her unexplained refusal
> to accept a COVID-19 vaccination when offered negates her
> otherwise compelling medical reasons for release.

*United States v. Jackson*, 2021 WL 1145903, at *2 (E.D. Pa. Mar. 25, 2021) (Beetlestone, J.).

Other courts within the Middle District and within the Third

Circuit have offered the same analysis and conclusion. *See Braxton v.*

*Warden*, 2021 WL 1516377, at *3 (M.D. Pa. Apr. 16, 2021) (Brann,

J.)("Braxton cannot refuse two highly effective and safe vaccines—

vaccines that millions of Americans are currently desperate to obtain—

and simultaneously claim that the COVID-19 pandemic is so threatening to his health and of such urgency that he cannot take the time necessary to properly exhaust his administrative remedies."); *United States v. Redman*, 2021 WL 1737485, at *1 (W.D. Pa. May 3, 2021) (Ambrose, J.) ("His unexplained refusal to accept a COVID-19 vaccination when offered negates any otherwise compelling medical reason for release."); *United States v. Ortiz*, 2021 WL 1422816, at *3 & *5 n.6 (E.D. Pa. Apr. 15, 2021) (Leeson, J.) (the court agrees with recent decisions that the defendant's "refusal to be vaccinated in the absence of a legitimate medical justification is fatal to his motion for compassionate release," adding, "common sense dictates that finding otherwise would risk creating perverse incentives. Overlooking a medically at-risk petitioner's refusal of an available vaccine and granting him compassionate release would likely incentivize other medically at-risk prisoners to decline an offer of a vaccine, putting themselves and others at risk."); *United States v. Cooper*, 2021 WL 1629258, at *7 (E.D. Pa. Apr. 27, 2021) (Joyner, J.) ("While he is certainly well within his rights to make his own decisions as to his own

14

medical care, the Court can reach no other conclusion but that if

Defendant had any serious concerns or fears for his health, safety and

well-being as a consequence of the coronavirus, he would have availed

himself of the COVID-19 vaccine which was offered."); *United States v.*

*Redman*, 2021 WL 1737485, at \*1 (W.D. Pa. May 3, 2021) (Ambrose, J.)

("His unexplained refusal to accept a COVID-19 vaccination when

offered negates any otherwise compelling medical reason for release.")

Another judge wrote:

> Defendant cannot establish that his conditions are exceptional
> and demand immediate release when he intentionally prevents
> the BOP from mitigating dangers to his health and safety. 18
> U.S.C. § 3582(c)(1)(A). A prisoner cannot on the one hand point to
> the risk of severe illness, while on the other hand refuse to
> participate in basic precautionary measures such as vaccination.
> Allowing federal prisoners to qualify for compassionate release by
> declining to receive a COVID-19 vaccine, without justification,
> would discourage prisoners from becoming vaccinated. The court
> is exceedingly hesitant to provide prisoners an incentive to
> increase their risk of contracting COVID-19 and developing severe
> symptoms. Such a result would be profoundly counter-productive
> and would militate against the ameliorative purposes of
> compassionate release. Denial of Defendant's request for release is
> warranted on this basis alone.

*United States v. Austin*, 2021 WL 1137987, \*2 (E.D. Mich. Mar. 25,
2021) (Cleland, J.).

Nearly all courts agree with these views.[2] *See, e.g.*, *United States v. Martinez*, 2021 WL 718208, at *2 (D. Ariz. Feb. 24, 2021) (Logan, J.); *United States v. Figueroa*, 2021 WL 1122590, at *5 (E.D. Cal. Mar. 24, 2021) (Mueller, C.J.) ("If defendants could buttress their motions for compassionate release by refusing a safe and effective vaccine, they would be operating on an unfairly perverse incentive."); *United States v. Piles*, 2021 WL 1198019, at *3 (D.D.C. Mar. 30, 2021) (Bates, J.); *United States v. Reynoso*, 2021 WL 950081, at *2 (D. Mass. Mar. 12, 2021) (Gorton, J.) ("[T]he sincerity of his concern for his health is dubious given that he rejected the opportunity to receive the COVID-19 vaccine"); *United States v. Toney*, 2021 WL 1175410, at *1 (E.D. Mich. Mar. 29, 2021) (Levy, J.); *United States v. King*, 2021 WL 736422, at *2 (S.D.N.Y. Feb. 24, 2021) (Seibel, J.); *United States v. Mascuzzio*, 2021 WL 794504, at *3 (S.D.N.Y. Mar. 2, 2021) (Keenan, J.); *United States v. McIntosh*, 2021 WL 1660682, at *4 (S.D.N.Y. Apr. 28, 2021) (Ramos, J.); *United States v. Deleston*, 2021 WL 1731779 (S.D.N.Y. May 3, 2021)

---

[2] This string cite provides just some of the numerous decisions in recent months affirming this point. The government will provide additional citations to the Court at its direction.

(Castel, J.) (the defendant presents obesity, diabetes, and other ailments, but denial of the vaccine weighs against release); *United States v. McBride*, 2021 WL 354129, at *3 (W.D.N.C. Feb. 2, 2021) (Bell, J.); *United States v. Cooper*, 2021 WL 1629258, at *7 (E.D. Pa. Apr. 27, 2021) (Joyner, J.) ("While he is certainly well within his rights to make his own decisions as to his own medical care, the Court can reach no other conclusion but that if Defendant had any serious concerns or fears for his health, safety and well-being as a consequence of the coronavirus, he would have availed himself of the COVID-19 vaccine which was offered."); *United States v. French*, 2021 WL 1316706, at *6 (M.D. Tenn. Apr. 8, 2021) (Richardson, J.) (relief denied in part based on refusal of vaccine); *United States v. Pruitt*, 2021 WL 1222155, at *3 (N.D. Tex. Apr. 1, 2021) (Boyle, J.).

Defendants have contested this consensus, pointing out that the vaccines may not be 100% effective, that they were not tested in a congregate setting, that they may not be effective for all individuals, that variants may emerge that bypass the vaccines, and that the

vaccines may cause side effects. These courts and others have almost uniformly rejected these arguments. One explained:

> Given that Rodriguez is or will soon be fully vaccinated against COVID-19, the Court concludes that Rodriguez's obesity and hypertension are not extraordinary and compelling reasons justifying his release. . . . Rodriguez argues that it is unclear how effective the Pfizer vaccine is, how long its effects will last, and whether it protects against the COVID variants, leaving a risk that he could still become seriously ill. Although all evidence to date is that the Pfizer vaccine is very effective, no one claims that it is 100 percent effective, and thus there remains a small risk that Rodriguez could be infected by COVID-19 and become seriously ill from that infection. But every prisoner runs a small risk of lots of serious medical conditions (including COVID-19). The small risk that Rodriguez may contract COVID-19 and become seriously ill is simply too speculative to justify his release.

*United States v. Rodriguez*, 2021 WL 1187149, at \*1-2 (D. Minn. Mar. 30, 2021) (Schlitz, J.).

Absent Aziz's concerns about COVID-19, the sincerity of which are wholly undermined by his refusal to take a vaccine, the defendant provides no argument that there is an extraordinary and compelling reason for him to be released from prison.

For these reasons, Aziz has failed to establish that there is an extraordinary and compelling reason for his release. His motion should, on that basis alone, be denied.

### C. Aziz Fails to Establish He is Not a Danger to the Community.

18

Further, Aziz fails to establish that he is not a danger to the community. USSG § 1B1.13(2). This period of incarceration stems from Aziz's conviction for a serious crime with the desire and potential for horrifying consequences – Conspiracy to Provide Material Support and Resources to a Designated Foreign Terrorist Organization and Attempt to do the same. His participation in this crime included his plans to purchase an underage female slave along with sharing the home addresses of dozens of American servicemembers. PSR ¶¶ 7h, 7e.

While others, such as Aziz's brother, advocate on his behalf, the filings fail to establish that Aziz himself has come to terms with the seriousness of his offense or that he has established a mature or healthy approach and plan for his life going forward.

Aziz does not adequately address how his time in prison has made him less dangerous. His request should be denied.

### D. Aziz Fails to Offer an Adequate Release Plan.

Moreover, throughout his requests to the Court, Aziz fails to offer the Court adequate details concerning his release plan. He states, "My Family lives at 645 Erford Rd. Camp Hill, PA 17011. I don't have a job

19

lined up for me as of now." Doc. 151-2. Aziz provides no information about the location where he will reside, apart from an address, and no concrete plan for what he intends to do to occupy his time.

Aziz also fails to elaborate as to the number of family members who will reside at the location or any information about their type of work or vaccination status. Faced with such little information, the Court cannot reasonably conclude the defendant's release will be into an environment safer than his current placement at USP-Marion.

Moreover, the defendant points to the conditions in which he was raised as an explanation or excuse for his criminal conduct, specifically an "overly controlling mother" and sheltered lifestyle. Doc. 151, 3. Under such circumstances, it would be wholly unreasonable to release him back into the very environment that drove him into an online terrorist community.

### D. The 3553(a) Factors Merit Continued Incarceration.

Finally, the 3553(a) factors merit continued incarceration. In particular, the nature and circumstances of the offense and the need for the sentence to reflect the seriousness of the offense, to promote respect

for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant all merited the 160-month sentence. Those same factors demand that Aziz serve the remaining six years of his sentence.

Aziz comes before this Court complaining of the risk of COVID-19 while refusing to do what he can to best protect himself from the virus. His decision to remain at risk does not fundamentally alter anything about the egregious nature of Aziz's offense. He engaged with and knowingly assisted a horrific terrorist organization. Aziz jeopardized the lives of dozens of America servicemembers.

Those servicemembers, their personal addresses provided to terrorists with such brutal encouragement as to behead them in their homes, had their lives upended. They were forced to relocate, hire private security, and otherwise take drastic steps to keep themselves and their families safe from the risk this defendant and others inflicted upon them. PSR ¶¶23-28.

21

At a time where online exploitation of personal information remains prolific and terrorism remains a threat, defendants like Aziz must be met with predictable and significant punishment via lengthy terms of incarceration.

Aziz's request for compassionate release should be denied.

## III.  CONCLUSION

Because Aziz fails to provide an extraordinary and compelling reason for release, he has failed to meet his evidentiary burden to establish entitlement to a sentence reduction via compassionate release.

For all of the foregoing these reasons, the Government respectfully requests that Aziz's motion be denied.

Respectfully submitted,

BRUCE D. BRANDLER
Acting United States Attorney


/s/ Alisan V. Martin_____
ALISAN V. MARTIN
Assistant United States Attorney
316 Federal Building
240 West Third Street
Williamsport, PA 17701
Phone: (570) 601-8486

Facsimile: (570) 326-7916

Date: August 9, 2021

23

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on August 9, 2021, she served a copy of the attached:

<u>GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION FOR COMPASSIONATE RELEASE</u>

by ECF:

  KATHY MANLEY, ESQ.
  Mkathy1296@gmail.com

      /s/ Alisan V. Martin

      _____

      ALISAN V. MARTIN
      Assistant United States Attorney